UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MARTIN J. WALSH, § | |
| Secretary of Labor, United States § | |
| Department of Labor § | |
| § | |
| v. § | CIVIL NO. 4:21-CV-909-SDJ |
| § | |
| PACCAR, INC. d/b/a PETERBILT § | |
| MOTOR CO. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant PACCAR Inc.'s Amended Motion to Dismiss and Brief in Support. (Dkt. #4). Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor, responded to the motion, (Dkt. #12), and PACCAR filed a reply, (Dkt. #18). The Court, having considered the motion, subsequent briefing, and applicable legal authorities, concludes that the motion to dismiss must be **DENIED**.

**I. BACKGROUND**

Aaron Carey is a former PACCAR employee who worked at a facility in Denton, Texas. As the COVID-19 pandemic began to spread in early 2020, Carey told a PACCAR Human Resources representative, Human Resources manager, and vice president about his concerns regarding the dangers posed by COVID-19 to employees working in close proximity. Carey requested details about PACCAR's plan to protect its employees from COVID-19. Management allegedly responded that PACCAR would clean workspaces and expected employees to continue to work.

1

In connection with an upcoming virtual meeting with the mayor of Denton, Carey emailed the Denton County Chamber of Commerce and asked what was being done to address COVID-19 concerns within PACCAR's Denton assembly plant. In his email, Carey noted that the "2000 employees in Denton working elbow to elbow on assembly . . . interact with the rest of the 3000-3500 total employees." (Dkt. #11-1 at 2). The Chamber of Commerce responded that Carey should discuss the issue with PACCAR management, and Carey replied that he had already done so. The Chamber of Commerce then forwarded the email thread to a contact at PACCAR, who forwarded the email to two PACCAR managers. One of those managers forwarded the email to Human Resources.

The next day, Carey's supervisor and two Human Resources managers called Carey into a meeting and told him that he was being terminated. They allegedly gave two reasons for Carey's termination—disclosing personal and trade secret information to the Chamber of Commerce and poor performance. According to the Secretary, these were not the true reasons for Carey's termination.

Shortly after his termination, Carey filed a retaliation complaint with the Occupational Safety and Health Administration ("OSHA"), alleging that PACCAR discriminated against him in violation of the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 660(c)(1). OSHA investigated and concluded that PACCAR violated the Act. Based on this determination, the Secretary brought suit against PACCAR for discrimination in violation of Section 11(c)(1) of the OSH Act. PACCAR

moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] arguing that the Secretary lacks authority to pursue the claim alleged and fails to state a claim.[2]

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has instructed that plausibility means "more than a sheer possibility," but not necessarily a probability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* at 678, 681. To determine whether the plaintiff has pleaded enough to "nudge[] [his] claims . . . across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Id.* at 679–80 (second alteration in original) (quoting *Twombly*, 550 U.S. at 570). This threshold is surpassed when "the plaintiff pleads factual content that

---

[1] The Court finds that Rule 12(b)(6) is the proper basis for both grounds for dismissal. "Unlike a dismissal for lack of constitutional standing . . ., a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam) (cleaned up).

[2] Although the motion to dismiss was filed before the Secretary amended the complaint, the Court construes it as a motion to dismiss the amended complaint, (Dkt. #11), because the parties continued to brief the motion to dismiss after the filing of the amended complaint and addressed the amended complaint in their briefing.

3

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A claim may also be dismissed pursuant to Rule 12(b)(6) "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

### III. Discussion

#### A. The OSH Act's Anti-Retaliation Provision

PACCAR seeks to dismiss the Secretary's sole claim, which is a claim for discrimination under the OSH Act. Therefore, before turning to the parties' arguments, the Court will briefly set forth the nature of such a claim. "Section 11 of [the OSH Act] prohibits employers from retaliating against their employees for reporting possible safety and health issues." *Perez v. Champagne Demolition, LLC*, No. 1:12-CV-1278, 2016 WL 3629095, at *3 (N.D.N.Y. June 29, 2016). An employee who believes he has been discriminated against in violation of Section 11(c)(1) may file a complaint with the Secretary of Labor, who will then investigate the claim. 29 U.S.C. § 660(c)(2). If the Secretary determines that a violation has occurred, he must bring an action in federal court. *Id.* The OSH Act "is remedial and preventative in nature and is to be liberally construed to effectuate its congressional purpose." *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 368 (8th Cir. 1994).

#### B. Standing

PACCAR contends that in light of the United States Supreme Court's ruling in *National Federation of Independent Business v. Department of Labor, Occupational Safety & Health Administration*, 142 S.Ct. 661, 211 L.Ed.2d 448 (2022) (per curiam), the Secretary does not have the authority to pursue this retaliation claim. PACCAR

argues that because the Supreme Court found that an emergency temporary standard requiring COVID-19 vaccination or testing for many employees constituted a public health measure that OSHA was not authorized to enact, the Secretary lacks the authority to bring a retaliation claim on behalf of an employee who complained about COVID-19 risks. PACCAR reads too much into the Supreme Court's decision.

*National Federation* involved a challenge to an emergency standard issued by the Secretary of Labor, acting through OSHA, that required employers with at least 100 employees to verify the vaccination status of their employees or require unvaccinated employees to undergo weekly COVID-19 testing and wear face masks at work. *Id.* at 663–64. The Fifth Circuit stayed enforcement of the emergency standard, the Sixth Circuit lifted the stay, and both the National Federation of Independent Business and a coalition of States (collectively, "Applicants") sought emergency relief from the Supreme Court, arguing that the mandate exceeded OSHA's statutory authority. *Id.* at 663.

Agreeing with the Applicants, the Supreme Court found that in issuing the emergency standard, OSHA overstepped its statutory authority to ensure "safe and healthful working conditions." *Id.* (quoting 29 U.S.C. § 651(b)). The Court determined that OSHA's emergency standard amounted to an unauthorized "broad public health measure[]" and that "OSHA's indiscriminate approach fails to account for th[e] crucial distinction . . . between occupational risk and risk more generally." *Id.* at 665–66. In reaching this conclusion, the Court noted that "[a]lthough COVID-19 is a risk that occurs in many workplaces, it is not an *occupational* hazard in most." *Id.*

5

at 665. Thus, PACCAR argues, the Secretary does not have the authority to pursue a retaliation claim on behalf of an employee terminated for allegedly complaining about risks associated with COVID-19 because the virus is not an "occupational hazard." (Dkt. #4 at 6).

But the *National Federation* Court explicitly stated that OSHA has "authority to regulate occupation-specific risks related to COVID-19." 142 S.Ct. at 665. "Where the virus poses a special danger because of the particular features of an employee's job or workplace, targeted regulations are plainly permissible." *Id.* at 665–66. For instance, OSHA may "regulate risks associated with working in particularly crowded or cramped environments." *Id.* at 666. Here, Carey's complaints focused on the risks posed by COVID-19 in his workplace, which he viewed as stemming from a crowded or cramped assembly plant. First, Carey expressed to PACCAR his "concerns about the dangers posed by COVID-19 as the assembly plant workers worked closer than six feet from each other." (Dkt. #11 at 3). Second, Carey informed the Chamber of Commerce of his concern with "employees . . . working elbow to elbow on assembly in the [PACCAR] plant." (Dkt. #11-1 at 2). When Carey was terminated after voicing these workplace-specific concerns, he filed a complaint with OSHA, leading to this lawsuit. Thus, this lawsuit arises not out of a "hazard[] of daily life," but rather "an *occupational* hazard." *Nat'l Fed'n*, 142 S.Ct. at 665. Because OSHA has the "authority to regulate occupation-specific risks related to COVID-19," *id.*, it follows that the Secretary has the authority to bring a retaliation complaint on behalf of an employee

6

alleging that he was terminated for complaining about occupation-specific risks related to COVID-19.[3]

The concerns present in *National Federation* simply are not present here. The Secretary is not attempting to exercise authority over "the everyday risk of contracting COVID-19" or to tackle "a threat that is untethered, in any causal sense, from the workplace." 142 S.Ct. at 666. And this is precisely what distinguishes this retaliation claim from the emergency standard. Where the emergency standard "operate[d] as a blunt instrument," "draw[ing] no distinctions based on industry or risk of exposure to COVID-19," the retaliation claim here stems from a specific employee's COVID-19 concerns in his workplace. *Id.* at 664. The *National Federation* ruling does not constrain the Secretary's authority to maintain this lawsuit.

"Section 11 of [the OSH Act] prohibits employers from retaliating against their employees for reporting possible safety and health issues." *Perez*, 2016 WL 3629095, at *3. The ruling in *National Federation* did not alter this fact. The Secretary alleges that Carey reported possible workplace health issues and was terminated as a result. Therefore, the Secretary has the authority to maintain this lawsuit.

## C. Failure to State a Claim

"Courts apply the same principles applicable in other retaliation cases to those brought under Section 11(c) of the OSH Act." *Acosta v. Lloyd Indus., Inc.*,

---

[3] PACCAR also argues that Carey's email to the Chamber of Commerce only addressed "generalized concerns" of people outside of PACCAR. (Dkt. #18 ¶ 9). But, for the reasons set forth above, the Court finds that the Secretary adequately alleged that Carey's complaints to PACCAR and to the Chamber of Commerce addressed occupation-specific risks related to COVID-19.

7

291 F.Supp.3d 647, 653 (E.D. Pa. 2017) (citing, among others, *Reich*, 32 F.3d at 365); *see also Solis v. Blue Bird Corp.*, 404 F.App'x 412, 413 n.2 (11th Cir. 2010) (per curiam) (concluding that it was proper for the district court to use the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting framework to analyze a Section 11(c)(1) retaliatory discharge claim). First, the plaintiff must establish a prima facie case of retaliation by alleging participation in a protected activity, an adverse action by the employer, and a causal connection between the protected activity and the adverse action. *Reich*, 32 F.3d at 365. The burden then shifts to the defendant to articulate an appropriate non-discriminatory reason for its action. *Id*. Then, the burden shifts back to the plaintiff to show that the articulated reason is pretextual. *Id.*

PACCAR challenges only the first element of the Secretary's prima facie case, i.e., whether the Secretary adequately alleged that Carey engaged in a protected activity.[4] There are four types of protected activity under Section 11(c)(1): (1) filing a complaint; (2) instituting or causing to be instituted a proceeding under or related to the OSH Act; (3) testifying or being on the verge of testifying in any such proceeding; and (4) exercising any right afforded by the OSH Act. 29 U.S.C. § 660(c)(1). Neither party contends that Carey testified or was about to testify in a proceeding. Thus, only the first, second, and fourth types of protected activity are at issue.

---

[4] PACCAR originally challenged the pretext prong as well. But in its reply, PACCAR concedes, solely for purposes of the motion to dismiss, that the Secretary has adequately alleged pretext. *See* (Dkt. #18 at 8 n.5).

8

### i. Type one and type two protected activity

The Secretary contends that Carey engaged in the first type of protected activity when he complained about COVID-19 issues to PACCAR Human Resources and a vice president in March 2020, attempted to complain to the mayor of Denton, and complained to the Chamber of Commerce. The Secretary argues that Carey engaged in the second type of protected activity because his attempted complaint to the mayor "could cause a proceeding to be instituted." (Dkt. #12 at 12). PACCAR responds that the Secretary did not plead either type of protected activity in his amended complaint.

PACCAR argues that the Secretary did not adequately allege that Carey engaged in protected activity by filing a complaint because "[t]he Secretary's only contention is that PACCAR discriminated against Carey 'because he exercised rights under or related to the Act[.]'" (Dkt. #18 ¶ 17 (second alteration in original) (quoting (Dkt. #11 § VII))). But the Secretary explicitly alleges that PACCAR engaged in "unlawful retaliation" when it terminated Carey for "expressing his valid complaints related to workplace safety and COVID-19 at [PACCAR's] facility and his attempts to ensure a safe workplace." (Dkt. #11 at 4). And the Secretary provides factual allegations related to Carey's complaints to a PACCAR Human Resources representative, Human Resources manager, and vice president and Carey's complaint to the Chamber of Commerce, which was forwarded to two PACCAR managers and two PACCAR Human Resources managers. (Dkt. #11 at 3–4).

"[C]omplaints to employers, if made in good faith, [are] related to the [OSH] Act . . . ." 29 C.F.R. § 1977.9(c). And for purposes of the motion to dismiss, PACCAR

9

"does not contend that Carey's statement to the Denton Chamber could *never* amount to 'protected activity.'" (Dkt. #18 ¶ 14). Rather, PACCAR challenges only whether Carey complained about a specific occupational hazard, which the Court addresses below. As such, at this stage, the Court assumes without deciding that Carey's second complaint constitutes protected activity under the OSH Act. Therefore, the Court finds that the Secretary adequately alleged that Carey engaged in the first type of protected activity when he complained to PACCAR and to the Chamber of Commerce.

The Court agrees with PACCAR, however, that the Secretary does not adequately allege that Carey engaged in the second type of protected activity—instituting or causing to be instituted a proceeding under the OSH Act. The Secretary argues that "*if* [Carey's] question was posed to the mayor in the public forum of a Facebook Live session, there is a *potential* it *could* cause a proceeding to be instituted under or related to the [OSH] Act." (Dkt. #12 at 12 (emphasis added)). But the Secretary does not allege that Carey's question was posed to the mayor. This distinguishes Carey's complaint from the complaint at issue in the only case cited by the Secretary, *Donovan v. R.D. Andersen Construction Co.*, 552 F.Supp. 249 (D. Kan. 1982). In that case, the employee actually communicated with a newspaper reporter about safety and health hazards, and the court concluded that "proceedings could be instituted after an employee's communications with the media." *Id.* at 253. Because the Secretary's allegations here amount to no more than conjecture regarding what may have happened had Carey engaged in hypothetical communications, the Court

finds that the Secretary has not adequately alleged that Carey engaged in the second type of protected activity.

### ii. Type four protected activity

Finally, the Secretary contends that Carey engaged in the fourth type of protected activity when he communicated with the Chamber of Commerce about his COVID-19-related concerns in his workplace. PACCAR responds that Carey did not exercise rights under or related to the OSH Act "because the thing he complained about—a general public health concern rather than a specific occupational hazard—is not within OSHA's regulatory ambit to begin with." (Dkt. #18 ¶ 14). For the reasons detailed above, the Court finds that Carey complained about a specific occupational hazard; namely, risks related to COVID-19 in an assembly plant where employees work "elbow to elbow." (Dkt. #11-1 at 2). By making this complaint, Carey exercised a right afforded to him by the OSH Act. *See Marshall v. Power City Elec., Inc.*, No. C-77-197, 1979 WL 23049, at *2 (E.D. Wash. Oct. 23, 1979) (determining that complaints are protected activities included within the clause of Section 11(c) protecting employees who have exercised any right afforded by the OSH Act). Therefore, the Court concludes that the Secretary plausibly alleged that Carey engaged in protected activity by exercising rights afforded by the OSH Act.[5]

Because the Secretary adequately alleged that Carey engaged in both the first and fourth types of protected activity, and because PACCAR does not challenge

---

[5] To the extent PACCAR contends that Carey did not engage in the first type of protected activity because his complaint was not within OSHA's regulatory ambit, the Court rejects that argument for the same reasons.

11

whether the Secretary has established pretext, the Court will not dismiss the Secretary's OSHA retaliation claim at this stage.

## IV. Conclusion

For the foregoing reasons, PACCAR's Amended Motion to Dismiss, (Dkt. #4), is **DENIED**.

**So ORDERED and SIGNED this 22nd day of September, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE